674 P.2d 21 (1983)
In the Matter of the ESTATE OF L.C. WESTFAHL, Deceased.
Betty Lou GOFORTH, Executrix, Appellant,
v.
Harold Wiley WESTFAHL, Appellee.
No. 59712.
Supreme Court of Oklahoma.
December 20, 1983.
Rehearing Denied January 24, 1984.
Butler & Pickens by David C. Butler, Enid, for appellant.
Ford, Grey, Harvey & Lisle by Jon R. Ford, Kimber Palmer, and Richard M. Perry, Enid, for appellee.
*23 HODGES, Justice.
The questions presented are whether: 1) no contest provisions contained in a will are valid; and 2) if submission of a subsequent will for probate constitutes a contest of the prior will.
After L.C. Westfahl died on December 5, 1976, his daughter, Betty Lou Goforth, the executrix of the will he executed on April 16, 1963, petitioned to admit the will to probate. Harold Wiley Westfahl, a son of the decedent, filed an objection to the probate of the 1963 will, and proffered a will executed by his father, dated July 6, 1976. The trial court admitted the 1963 will to probate, after it found that the 1976 will had been procured by the undue influence of Harold Westfahl.
Because the 1963 will contained a forfeiture clause,[1] when the executrix filed her petition for settlement of final account, determination of heirship, and distribution, she sought to exclude Harold from his portion of the estate, based on his attempt to probate the 1976 will. She asserted that Harold's attempt to probate the 1976 will was within the ambit of behavior prohibited by the will, and that he should be awarded $1.00 and nothing more.

I
A forfeiture clause is an executory limitation which is employed to effect testamentary intention, and its use is within the province of the testator if it does not contravene public policy or a rule of law.[2] The validity of no contest clauses has been explicitly and implicitly[3] acknowledged by this Court. Because no contest clauses protect estates from costly, time consuming and vexatious litigation; and serve to minimize family bickering concerning the competence and capacity of the testator, as well as the amounts bequeathed,[4] they are favored by public policy.[5] A provision in a *24 will which requires forfeiture of a bequest or devise in the event of a contest of the will is binding on the legatee or devisee. The in terrorem clause must be strictly construed against forfeiture, enforced as written, and interpreted reasonably in favor of the beneficiary. No wider scope can be given to the verbage employed than is plainly required; nor may the court place a strained or overly technical construction upon the language.[6] Forfeiture provisions in a will are to be strictly construed, and forfeiture avoided if possible. Testamentary dispositions are presumed to vest at the testator's death, and cannot be divested unless the precise contingency prescribed by the testator occurs.[7] It is only where the acts of the parties fall strictly within the express terms of the punitive clause of the will that a breach may be declared.[8]
The word, contest, as it pertains to a no contest clause is defined as any legal proceeding designed to result in the thwarting of the testator's wishes as expressed in the will. Whether there has been a contest within the meaning of the language used in the clause is decided according to the circumstances in each case.[9] However, a clear and unequivocal attack must be made on the will before the penalty contained in the no contest clause will be invoked. The meaning of the word used by the testator and the consideration of the purpose is the determinative factor in ascertaining whether the proceedings constitute a will contest within the purview of the no contest clause. The intention of the testator is controlling; when the court construes a will, it must ascertain and give effect to the testator's intent, unless the intent attempts to effect what the law forbids.[10] Each will must be construed by examining the peculiar surrounding circumstances, the language employed, and the intention of the testator gathered from the general situation.[11] Attendant circumstances may be contemplated to perceive the testator's true intent and the testator's feelings toward the beneficiary named in the will.[12]
Although there is a split in authority concerning whether a forfeiture clause will be enforced if good cause is shown, the consensus rule is that the forfeiture clause should not be invoked if the contestant has *25 probable cause to challenge the will based on forgery or subsequent revocation by a later will or codicil.[13] An attempt in good faith to probate a later purported will, spurious in fact, but believed to be genuine by the one presenting it for probate, does not render the offeror subject to the forfeiture provisions of no contest clauses if he/she has probable cause to believe that the instrument is genuine and entitled to probate. This rule is premised on two tenets: 1) It cannot be presumed that the testator intended to limit his/her freedom of subsequent testamentary action, and 2) it is the duty of a legatee/devisee, named as executor, to offer a subsequent will for probate, and it would be contra to public policy to subject him/her to sanctions for performing a statutory duty.[14]
There is a legal obligation to produce a will for probate by one who has custody of the will.[15] However, an attempt to probate a will, known not to be a genuine instrument,[16] falls within the forbidden behavior of the in terrorem clause, and will result in the sacrifice of the legatee's/devisee's share. Under the facts of this case, we find that Harold did not contest the validity of the 1963 will; he performed his statutory duty by propounding the 1976 will. Had he failed to produce the will, any of the Westfahl Estate heirs could have compelled its production and Harold's incarceration.[17] The statutes require that all wills be presented to the court for its determination concerning which is to be given full force and effect. We agree with the trial court's finding that the no contest clause was inapplicable to Harold's actions.
AFFIRMED.
BARNES, C.J., SIMMS, V.C.J., and LAVENDER, DOOLIN, HARGRAVE, OPALA and WILSON, JJ., concur.
NOTES
[1] The no contest clause provided:

"It is my further will and desire that should any of my heirs at law contest this will, or seek to change the terms thereof, that that child shall be given the sum of One Dollar ($1.00), which shall operate as his or her full and complete inheritance from me, and that they shall take no other property other than the said One Dollar."
[2] Alper v. Alper, 2 N.J. 105, 65 A.2d 737, 739, 7 A.L.R.2d 1350, 1355 (1949).
[3] In Whitmore v. Smith, 94 Okl. 90, 221 P. 775, 777 (1923) the Court' discussed a clause which provided, "I hereby direct that if any of the legatees herein mentioned, contest this will and try to break or avoid it they are for that reason to cease to be a beneficiary of my estate." The Court found that there was no question that a will containing such a clause, if contested or avoided by the beneficiaries, would result in a forfeiture under the will.

See also Bridgeford v. Estate of Chamberlin, 573 P.2d 694, 696 (Okl. 1978); In Re Rettenmeyer's Estate, 345 P.2d 872 (Okl. 1959); and Grace v. Hildebrandt, 110 Okl. 181, 237 P. 98, 100 (1925) for implicit recognition of the validity of no contest clauses.
[4] In the Matter of the Estate of Seymour, 93 N.M. 328, 600 P.2d 274, 278 (N.M. 1979); Ryan v. Wachovia Bank & Trust Co., 235 N.C. 585, 70 S.E.2d 853, 856 (1952).
[5] Public policy considerations were discussed in Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793, 800 (1897) in which the Court said:

"... Experience has shown that often after the death of a testator unexpected difficulties arise, technical rules of law are found to have been trespassed upon, contests are commenced wherein not infrequently are brought to light matters of private life that ought never to be made public, and in respect to which the voice of the testator cannot be heard either in explanation or denial, and as a result the manifest intention of the testator is thwarted. It is not strange in view of this, that testators have desired to secure compliance with their dispositions of property and have sought to incorporate provisions which should operate most powerfully to accomplish that result. And when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions of his will, the courts wisely hold that no legatee shall without compliance with that condition receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes."
* * * * * *
[6] In Re Fuller's Estate, 143 Cal. App.2d 820, 300 P.2d 342, 345 (1956); Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444, 20 A.2d 21 (1941).
[7] Parks v. Lefeber, 162 Okl. 265, 20 P.2d 179 (1933). See also 84 O.S. 1981 §§ 175, 176 which provide:

§ 175. Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death.
§ 176. A testamentary disposition, when vested, cannot be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose.
[8] Saier v. Saier, 366 Mich. 515, 115 N.W.2d 279, 281 (1962).
[9] In Re Miller's Estate, 212 Cal. App.2d 284, 27 Cal. Rptr. 909 (1963). In Re Howard's Estate, 68 Cal. App.2d 9, 155 P.2d 841-42 (1945).
[10] In the Matter of Bovaird's Estate, 645 P.2d 500 (Okl. 1982); Bridgeford v. Estate of Chamberlin, 573 P.2d 694, 696 (Okl. 1978); Hardy v. Carnes, 294 P.2d 551, 552 (Okl. 1956); In Re Hite's Estate, 155 Cal. 436, 101 P. 443, 447 (1909).

Title 84 O.S. 1981 § 151 provides:
"A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible."
[11] In Re Hite's Estate, id.
[12] Savage v. Hill, 346 P.2d 323, 326 (Okl. 1959); In Re Fletcher's Estate, 308 P.2d 304, 313 (Okl. 1957).

Title 84 O.S. 1981 § 152 states:
"In case of uncertainty, arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations."
[13] Alper v. Alper, note 2, supra.
[14] In Re Bergland's Estate, 180 Cal. 629, 182 P. 277, 279, 5 A.L.R. 1363 (1919); In Re Kirkholder's Estate, 171 App.Div. 153, 157 N.Y.S. 37 (1916). See also Annot., "What Constitutes Contest Or Attempt To Defeat Will Within Provisions Thereof Forfeiting Share Of Contesting Beneficiary," 49 A.L.R.2d 198, 241-43 (1956).
[15] It is provided by 58 O.S. 1981 §§ 21, 24:

§ 21. Every custodian of a will, within thirty (30) days after receipt of information that the maker thereof is dead, must deliver the same to the district court having jurisdiction of the estate, or to the executor named therein. A failure to comply with the provisions of this section makes the person failing responsible for all damages sustained by any one injured thereby."
§ 24. If it be alleged in the petition that the will is in the possession of a third person and the court is satisfied that the allegation is correct, an order must be issued and served upon the person having possession of the will, requiring him to produce it in the court at the time named in the order. If he has possession of the will and neglects or refuses to produce it in obedience to the order, he may by warrant of the court be committed to the jail of the county, and kept in close confinement until he produces it."
See also Wah-Kon-Tah-He-Ump-Ah's Estate, 128 Okl. 179, 261 P. 973, 976 (1927).
[16] In Re Mathie's Estate, 64 Cal. App.2d 767, 149 P.2d 485, 490 (1944).
[17] See note 15, supra.